UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRANDON KEENEY *and* WILLIAM PAYNE, *on behalf of themselves and a collective of similarly situated individuals*,

Plaintiffs,

-v-

THE CITY OF NEW YORK,

Defendant.

---

25 Civ. 6933 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Brandon Keeney and William Payne, former firefighters, bring this putative collective action against the City of New York ("the City"), pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"). They allege that the Fire Department of New York ("FDNY") failed to compensate them for overtime hours.

The City now moves to dismiss the Second Amended Complaint ("SAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court dismisses the SAC, while granting plaintiffs leave to amend.

## I.     Background[1]

### A.     Payne's Career at FDNY

Payne was employed at FDNY between March 28, 2022 and September 26, 2023. Dkt. 19 ("SAC") ¶ 10. He served as a cadet at the Randall's Island Fire Academy (the

---

[1] The following facts are drawn from the SAC, Dkt. 19. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). For purposes of resolving the motion to dismiss under Rule 12(b)(6), the Court

"Academy") until August 9, 2022, and then joined Ladder 24 as a probationary firefighter. *Id.* Payne's salary was approximately $55,000 throughout his employment at FDNY. *Id.*

### B.    Keeney's Career at FDNY

Keeney was employed at FDNY between September 12, 2022 and October 2024. *Id.* ¶ 11. He served as a cadet at the Academy until January 2023. *Id.* He then served as a probationary firefighter at the Engine Company 299 until May 2023, and at FDNY's Bureau of Health Services until October 2024. *Id.* Keeney's salary was approximately $44,000 throughout his employment at FDNY. *Id.*

### C.    Allegations Related to Plaintiffs' Overtime Hours and Compensation

#### 1.    The Academy

*Hours*: The SAC makes the following broad allegations about plaintiffs' hours at the Academy. Plaintiffs, it claims, worked more than 212 hours in a 28-day work period, or a proportional number of hours over shorter work periods, without being paid overtime wages. *Id.* ¶ 14. Plaintiffs "regularly" worked between 240 and 280 hours in a 28-day work period, and "there would be days" when they arrived at the Academy at 5 a.m. and were not dismissed until 5:30 p.m. or later. *Id.* Plaintiffs were "required" to work these hours to meet performance expectations. *Id.*

The SAC does not go beyond these general allegations. It does not specify the hours that either plaintiff worked during any week, or 28-day period, during their employment at the Academy. It does, however, reproduce what it claims is a daily schedule from the Academy. *Id.* ¶ 17. That schedule reflects that there was an early class day, which extended from 6:45 a.m. to 4 p.m., and a late class day, which extended from 8:35 a.m. to 5:45 p.m. *Id.* Each included a

_____

accepts all factual allegations in the SAC as true, drawing all reasonable inferences in plaintiffs' favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

lunch break (40 minutes and 45 minutes, respectively). *Id.* This schedule, the SAC alleges, supports that plaintiffs "regularly" worked more than 40 hours per week, "without counting overtime work and 'off-the-clock' work." *Id.* And, it alleges, the schedule does not capture the additional "substantial 'off-the-clock' hours [p]laintiffs were required to spend." *Id.*

**Pay**: The SAC alleges that plaintiffs were paid for 40 hours of work per week at an hourly rate of approximately $22 to $27. *Id.* ¶ 15. It acknowledges that plaintiffs were paid "overtime pay for certain additional hours" at a rate of approximately $34 to $40.50 per hour. *Id.* It does not specify the overtime pay of either plaintiff during any particular week, or 28-day period, of their employment. It does, however, allege that plaintiffs were not compensated for "off-the-clock" work they were required to perform. *Id.* ¶ 16.

### 2.      Post-Academy

The SAC makes similarly broad, and sparse, allegations about plaintiffs' hours and pay as probationary firefighters. It alleges generally that plaintiffs worked more than 212 hours in a 28-day work period, or a proportional number of hours over shorter work periods, but were not paid required overtime wages. *Id.* ¶ 21. It again does not quantify either plaintiff's pay, or hours, during any particular week, or 28-day period, of their employment. It does, however, allege that plaintiffs were "regularly" required to report to work two hours before their shifts began and to remain at the firehouse for "several hours after their shifts ended," but were not compensated for that work. *Id.*[2]

---

[2] The SAC alleges that FDNY "knew" of plaintiffs' uncompensated overtime work and that an attorney for the firefighters' union has admitted to Payne that unpaid work was a "global issue" for FDNY. SAC ¶¶ 22–23.

### D.    Procedural History

On January 21, 2025, Keeney and Payne filed an initial complaint, which they later amended, in New York State Supreme Court in Manhattan. Dkts. 2-1, 2-2 ("FAC"). On August 21, 2025, the case was removed to this Court. *See id.* On November 19, 2025, the City moved to dismiss the FAC. Dkts. 12–13 ("First MTD"). On November 20, 2025, the Court issued an amend-or-oppose order, directing plaintiffs to file any amended complaint by December 11, 2025, and stating that "[n]o further opportunities to amend will ordinarily be granted." Dkt. 14.

On December 19, 2025, plaintiffs filed the SAC, the operative complaint today. Dkt. 19. On January 29, 2026, the City moved to dismiss the SAC. Dkts. 22–23 ("Mot."). On February 27, 2026, plaintiffs opposed. Dkt. 26 ("Opp'n"). On April 15, 2026, the City replied. Dkt. 29.

## II.    Applicable Legal Standards

### A.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. For the purpose of resolving a motion to dismiss, the Court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only

4

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

**B.    The FLSA**

The FLSA generally requires that an employer pay its employees for overtime work—work in excess of 40 hours per week—"at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The statute, however, contains a distinct provision governing employees engaged in "fire protection and law enforcement activities." 29 U.S.C. § 207(k). It exempts such employees from the statute's weekly overtime-pay requirements, "upping the threshold at which overtime compensation entitlement begins." *Feaser v. City of New York*, 93 Civ. 5739, 1995 WL 350848, at *3 (S.D.N.Y. June 9, 1995) (citation omitted). Under section 207(k), public agency employers are required to pay overtime if the number of hours worked by law enforcement and fire protection employees exceeds 212 hours during a 28-day period, or a proportional number of hours over shorter periods. *Id.*; 29 C.F.R. § 553.201.

**III.    Discussion**

**A.    Failure to State a Claim**

The City moves to dismiss the SAC's claim for unpaid overtime compensation.[3]

**1.    Governing Legal Framework**

To plausibly plead a FLSA overtime violation, a complaint generally must "allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). The complaint must contain "sufficient detail about the length and frequency of [plaintiffs'] unpaid

---

[3] The SAC brought separate claims of minimum wage violations and failure to pay wages in a timely manner, but plaintiffs have moved to voluntarily dismiss them. *See* Opp'n at 4 n.1.

work to support a reasonable inference that they worked more than forty hours in a given week."

*Nakahata v. New-York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013).

However, plaintiffs are not required "to keep careful records and plead their hours with

mathematical precision." *Dejesus v. HF Mgmt. Servs.*, 726 F.3d 85, 90 (2d Cir. 2013).

"Determining whether a plausible claim has been pled is 'a context-specific task.'" *Lundy*, 711

F.3d at 114 (quoting *Iqbal*, 556 U.S. at 679).

The Circuit recently clarified the *Lundy* pleading standard in *Herrera v. Comme des

Garcons, Ltd.*, 84 F.4th 110 (2d Cir. 2023). It stated that the "straightforward lesson" from its

precedents is that FLSA claims must be pled "with specificity," which serves to "impose[]

meaningful constraints on FLSA overtime claims," enabling courts to "separate meritless claims

from genuine ones." *Id.* at 115, 118 (citation omitted). This specificity requirement, the Circuit

explained, does not require an approximation of overtime hours, although such "may help draw a

plaintiff's claim closer to plausibility." *Id.* at 114 (citing *Nakahata*, 723 F.3d at 201 n.10). It

also does not require that the complaint "list *specific* weeks during which the Plaintiffs worked

more than forty hours." *Id.* at 116 (emphasis in original). Instead, the Circuit stated, the

complaint must allege "40 hours of work in a given workweek as well as some uncompensated

time in excess of the 40 hours." *Id.* at 115 (citation omitted). This pleading standard is unmet if

a complaint makes generalized allegations of overtime violations, such as that the plaintiffs

worked overtime "in some or all workweeks," *id.* at 114 (citing *Dejesus*, 726 F.3d at 90), or that

"at *some* undefined period in [plaintiffs'] employment they worked more than forty hours in a

single week," *id.* at 117 (emphasis in original). It is satisfied, however, if "plaintiffs allege that

their regularly scheduled workweek for a given period of time included more than forty hours of

work," in which case plaintiffs "need only allege the period of time during which they were employed." *Id.* at 117.

Unsurprisingly, the caselaw within this Circuit applying *Lundy*'s specificity requirement has overwhelmingly arisen in the familiar context of FLSA claims brought by nonexempt employees whose overtime pay was governed by section 207(a)(1)'s 40-hour rule. *See, e.g., Cromwell v. N.Y.C. Health & Hosps. Corp.*, No. 12 Civ. 4251 (PAE), 2013 WL 2099252, at *3– 4 (S.D.N.Y. May 15, 2013) (applying *Lundy* pleading standard to claims brought by nonexempt employee); *Collison v. WANDRD, LLC*, 737 F. Supp. 3d 231, 239 (S.D.N.Y. 2024) (same); *Stewart v. Summit Health Mgmt.*, No. 23 Civ. 4073, 2024 WL 3274687 at *4 (S.D.N.Y. July 1, 2024) (same). But although cases involving classes of employees whose entitlement to overtime is governed by section 207(k)'s 212-hour rule are rarer, it logically follows that the same specificity requirement—that the complaint set out specific allegations as to the plaintiffs' hours and pay during a work period that make out an overtime violation—applies. The goal of enabling courts to "separate meritless claims from genuine ones," *Herrera*, 84 F.4th at 118, is equally important with respect to claims of unpaid overtime arising from longer work periods. The Court accordingly applies *Lundy*'s specificity requirement to plaintiffs' claims. *See, e.g., Pappas v. City of New York*, No. 23 Civ. 6010, 2024 WL 2093472, at *14 (S.D.N.Y. May 9, 2024) (Liman, J.) (applying specificity requirement to claims brought by police officers, whose overtime is governed by section 207(k), because there is "no reason that the same principles would not be applicable in the public law enforcement context").

### 2.    Application

The City argues that the SAC's allegations—broadly alleging that plaintiffs worked more than 212 hours during 28-day work periods but were not paid the required overtime—are too

generalized to satisfy *Lundy*'s pleading requirement and thus do not state a claim.  Mot. at 6–7.  The City is correct.

The SAC contains only these allegations as to plaintiffs' overtime hours and pay while at the Academy.  It alleges generally that plaintiffs "regularly" worked between 240 and 280 hours during 28-day periods—*i.e.*, above the statutory threshold of 212 hours—without being paid adequate overtime wages.  SAC ¶ 14.  It alleges that "there would be days" when plaintiffs would arrive at 5 a.m. and not be dismissed until 5:30 p.m. or later.  *Id.*  It alleges that, consistent with the Academy's daily schedule, plaintiffs "regularly" worked more than 40 hours, without counting "overtime" and "off-the clock" work.  *Id.* ¶ 17.  As to compensation, the SAC alleges that plaintiffs "received overtime pay for certain additional hours at a rate of approximately $34–$40.50 per hour."  *Id.*  It alleges that plaintiffs were not, however, "compensated for the 'off-the-clock' work that they were required to perform" at the required rate of "one and one-half times their regular rate of pay or minimum wages."  *Id.* ¶¶ 14, 16.

These allegations do not satisfy the *Lundy* standard.  The SAC does not approximate how many shifts plaintiffs worked over a typical week or 28-day period.  It does not allege the average length of a shift.  It does not allege how often plaintiffs arrived early or departed late, or how many additional hours were attributable to such early arrivals and late departures.  Although none of these deficiencies alone defeats plausibility, taken together, they depict a complaint that is simply "far too vague and unhelpful for putting a defendant on notice of the alleged violation."  *Herrera*, 84 F.4th at 117.  The SAC thus lacks the specificity of the allegations that enabled the Second Circuit in *Herrera* "to infer that [plaintiffs] were entitled to overtime under the FLSA."  *Id.* at 115 (alleging regularly scheduled workweek consisting of five shifts per week, each lasting between eight and three-quarter hours and nine hours; plaintiffs regularly devoted additional five

hours per week to post-work duties and three hours per week to receiving shipments; and early arrivals/late departures comprised approximately five additional hours per week).

The SAC's lack of specificity is all the more problematic because it acknowledges that FDNY paid plaintiffs overtime pay for "certain additional hours." SAC ¶ 15. It is thus unclear how often plaintiffs worked overtime hours that went uncompensated. For example, the SAC attaches a daily schedule that purportedly shows plaintiffs "regularly work[ed] over 40 hours, without counting overtime work and 'off-the-clock' work." *Id.* ¶ 17. The Court cannot determine, based on the SAC's allegations: (1) whether plaintiffs were compensated for any overtime reflected on the daily schedule; (2) approximately how many additional overtime hours were worked beyond what the schedule reflects; (3) whether all such additional hours were uncompensated; and (4) if not, at what rate plaintiffs were compensated for those hours. The SAC merely leaves the Court with the general impression that there were "substantial 'off-the-clock' hours" which plaintiffs worked and for which they did not receive overtime pay. *Id.* ¶¶ 14–16. These hazy allegations make it impossible to gauge whether plaintiffs' pay over any 28-day period fell short of what the FLSA required. The Court is thus unable to perform its task of "separat[ing] meritless claims from genuine ones." *Herrera*, 84 F.4th at 118.

The SAC's allegations with respect to plaintiffs' hours and pay after the Academy are even more threadbare. It broadly alleges that plaintiffs worked more than 212 hours in a 28-day period, or a proportional number of hours over shorter work periods, without receiving overtime pay. SAC ¶ 21. It alleges that plaintiffs were "regularly" required to report to work two hours before their shifts began and remain several hours after their shifts ended. *Id.* But that is all. These allegations, which do little more than track the language of section 207(k), do not satisfy the Second Circuit's specificity requirement. *Dejesus*, 726 F.3d at 89 (allegations inadequate

where plaintiff "alleged only that in 'some or all weeks' she worked more than 'forty hours' a week" without overtime pay); *see, e.g., Romero v. Metro. Transp. Auth.*, 444 F. Supp. 3d 583, 588 (S.D.N.Y. 2020) (dismissing complaint where plaintiffs made conclusory claims that "simply repeat the language of the statute"); *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 509–10 (E.D.N.Y. 2011) (similar).

The SAC's allegations of unpaid overtime are thus deficient as to both periods of plaintiffs' employment. *See, e.g., Lundy*, 711 F.3d at 114–15 (claim that plaintiff "occasionally" worked an additional or longer shift "suppl[ied] nothing but low-octane fuel for speculation," where complaint did not allege "how occasionally or how long"); *Mota v. Abalon Exterminating Co.*, No. 22 Civ. 7602, 2024 WL 4202687, at *5 (S.D.N.Y. Sept. 16, 2024) ("even post-*Herrera*," alleging that plaintiffs "typically," "generally," and "consistently," while conceding estimates varied, was "inadequate"); *Musiello v. CBS Corp.*, 518 F. Supp. 3d 782, 794 (S.D.N.Y. 2021) (dismissing complaint that failed to allege "what specific workweek the plaintiff worked overtime, or by how many hours for any specific workweek"); *Mizzero v. Albany Med Health Sys.*, 23 Civ. 548, 2024 WL 2078628, at *7 (N.D.N.Y. May 9, 2024) (allegations related to pre-shift work did not support overtime claim where "there is no suggestion . . . regarding the actual frequency with which this pre-shift work occurred," and "vague words such as 'regularly' and 'routine' do not alone suffice").[4]

Plaintiffs' arguments to the contrary are unavailing.

---

[4] In light of its holding that the FLSA claims are implausibly pled, the Court does not have occasion to address whether, as the City also contends, the SAC fails to adequately plead willfulness. A willful violation extends the FLSA limitations period from two to three years and can subject the employer to an award of liquidated damages. *See Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 322 (2d Cir. 2021).

10

First, plaintiffs argue that the SAC contains adequate detail insofar as it alleges plaintiffs' "specific start and end times." Opp'n at 6; *see also* SAC ¶ 14 ("there would be days" when plaintiffs "would arrive at training as early as 5:00 a.m. and would not be dismissed until 5:30 p.m. or later"); *id.* ¶ 21 (plaintiffs "regularly required to report to the firehouse two hours before their shifts began and remain at the firehouse for several hours after their shifts ended"). But the SAC does not allege, even in the most general terms, how many such shifts plaintiffs worked during a 28-day period. On the facts pled, it is conceivable that, over a 28-day period, plaintiffs worked three long days (from 5 a.m. to 5:30 p.m.), 20 standard days (from 9 a.m. to 5 p.m.), and took five days off, such that they worked a total of 197.5 hours—below the 212-hour threshold for overtime pay. Or plaintiffs could have worked three long days, 22 standard days, and taken three days off, such that they worked a total of 213.5 hours—above the 212-hour threshold. A complaint that "invite[s]" such "speculation" does not state a plausible claim under the FLSA. *Lundy*, 711 F.3d at 115.

Second, plaintiffs argue that the SAC's allegations resemble those that courts have found adequate to plead a FLSA overtime violation. Opp'n at 7–8. But the complaints in those cases were materially more specific as to overtime hours worked in a given period, whether such hours were compensated, and at what rate. They therefore satisfied *Lundy*. *See, e.g., Humphrey v. Rav Investigative & Sec. Servs. Ltd.*, 169 F. Supp. 3d 489, 497 (S.D.N.Y. 2016) (denying motion to dismiss where plaintiff alleged working "a ten-hour night shift . . . from 9:00 p.m. to 7:00 a.m. on Sunday through Wednesday nights," arriving "30-minutes early" each shift, and arriving "an hour early" on Sundays, totaling "two and one-half hours of uncompensated work" each week); *Perry v. City of New York*, No. 13 Civ. 1015, 2013 WL 6641893, at *3 (S.D.N.Y. Dec. 17, 2013) (same, where three plaintiffs alleged working "forty hours in approximately thirty-five weeks of

the year," one plaintiff alleged working "forty hours every week of the year," and all plaintiffs alleged working additional uncompensated time "on a daily basis," listing specific tasks performed); *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 456–57 (E.D.N.Y. 2014) (same, where plaintiffs alleged that they "worked nighttime shifts of 10.5 hours or more at least five days a week," and alleged specific months where they worked more than 40 hours, only some of which were compensated).

The Court accordingly finds that the SAC does not plausibly plead a FLSA overtime violation.

## B.    Leave to Amend

Plaintiffs seek leave to amend the SAC to cure any deficiencies found by the Court. The City opposes this application.

### 1.    Governing Legal Framework

District courts have broad discretion in whether to grant leave to amend. *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000), *cert. denied*, 534 U.S. 826 (2001). Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave when justice so requires." Courts deny leave to amend "in instances of futility . . . [or] repeated failure to cure deficiencies by amendments previously allowed." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (citation omitted). "Leave to amend may be denied as futile when the proposed pleading would not survive a motion to dismiss." *Blagman v. Apple, Inc.*, 307

F.R.D. 107, 116 (S.D.N.Y. 2015) (citing *AEP Energy Services Gas Holding Co. v. Bank of America, N.A.,* 626 F.3d 699, 726 (2d Cir. 2010)).

### 2.    Application

The Court finds that amendment of the SAC would not be futile.

It is true, as the City notes, that plaintiffs had a previous opportunity to amend in response to a motion to dismiss. But the instant motion to dismiss was the first in which the City identified a *Lundy* violation in the operative complaint. In its first motion to dismiss, the City instead argued that the FAC did not state a claim because its allegations were incorrectly premised on the applicability of the 40-hour rule of section 207(a), whereas in fact the 212-hour rule of section 207(k) applied. *See* First MTD at 4–7 ("Nowhere do [p]laintiffs allege that they worked more than 212 hours in any 28-day period . . . ."). The SAC accordingly reformulated its overtime allegations in such terms.

Ideally, plaintiffs' counsel, in fashioning the SAC, would have been alert to the *Lundy* line of cases and drafted the SAC with the requisite specificity. But the Court cannot find repleading futile. On the contrary, the allegations in the SAC leave open the possibility that a well-pled complaint would document a violation of the FLSA overtime requirements. To assure that counsel's lapse does not deprive plaintiffs of an opportunity to pursue plausible claims, the Court therefore will give plaintiffs one final opportunity to amend. *See, e.g., Pappas,* 2024 WL 2093472, at *15 (permitting repleading in FLSA overtime case in recognition that allegations "made in greater detail with attention to the pleading requirements" might salvage claims); *Perkins v. 199 SEIU United Healthcare Workers E.,* 73 F. Supp. 3d 278, 291 (S.D.N.Y. 2014) (same, where "[i]t is conceivable that, given leave to amend, [plaintiff] could adequately plead a violation of the FLSA"); *Sampson v. Medisys Health Network Inc.,* No. 10

13

Civ. 1342, 2011 WL 579155, at *10 (E.D.N.Y. Feb. 8, 2011) (same, to enable plaintiffs to add

"significantly more factual detail" (citation omitted)).

## CONCLUSION

For the foregoing reasons, the Court grants the City's motion to dismiss the SAC under

Rule 12(b)(6). The dismissal is without prejudice to plaintiffs' right to amend the complaint,

provided that such an amendment is filed within four weeks of this decision.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 22.


SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge


Dated: June 30, 2026
      New York, New York

14